**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

DIANNA L. WINTERMUTE,                        :

                Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.            :

Case No. 3:07-cv-209

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant Commissioner's Motion to Enter Judgment Reversing the Commissioner's Decision with Remand to the Agency. (Doc. 13). Plaintiff opposes the Commissioner's Motion. (Doc. 14).

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the Commissioner's final decision denying Plaintiff's application for Social Security benefits. (Doc. 1). Plaintiff subsequently filed her Statement of Errors and the Commissioner responded by filing his present Motion. (Doc. 9; 13).

In his Memorandum in Support, while the Commissioner implicitly concedes that his decision is not supported by substantial evidence on the record as a whole and therefore should be reversed, he argues that the matter should be remanded for additional administrative proceedings. The Commissioner admits that he relied on the medical advisor's (MA) opinion and that his reliance

was in error because the MA's opinion was based solely on Plaintiff's fibromyalgia and did not take into consideration Plaintiff's other impairments including myotonic muscular dystrophy, brittle diabetes, and a sleep disorder. However, the Commissioner argues that not all of the factual issues have been resolved and the record does not establish Plaintiff's entitlement to benefits and therefore should be remanded so he can consider Plaintiff's impairments in combination.

While Plaintiff does not oppose the Commissioner's Motion insofar as he seeks reversal of the Commissioner's judgment, Plaintiff does oppose remand of the matter. Plaintiff argues that all of the factual issues have been resolved and that the record adequately establishes her entitlement to benefits. Specifically, Plaintiff's position is treating physicians' opinions are uncontradicted are sufficient to prove that she is disabled and entitled to benefits.

A brief review of the medical evidence is appropriate at this point.

Plaintiff has a long-standing history of diabetes and was diagnosed with that disorder at age 23. *See,* Tr. 181. Additionally, Plaintiff has a history of uterine cancer, for which she underwent a total abdominal hysterectomy, a history of three detached retinas, and a history of removal of a cataract from each eye. *See,* Tr. 279. In December, 1995, Plaintiff underwent genetic testing which confirmed the presence of full mutation myotonic dystrophy. *See* Tr. 380.

Plaintiff began experiencing profound fatigue in April, 2000, and in June, 2001, she was diagnosed with chronic fatigue syndrome. *See,* Tr. 245. A March, 2002, sleep study revealed that Plaintiff had sleep apnea for which Dr. Burton treated her. (Tr. 171-74; 305-15). In May, 2002, Plaintiff was diagnosed with severe classic chronic fatigue syndrome with fibromyalgia. (Tr. 170).

Endocrinologist Dr. Blackman has treated Plaintiff for Type I diabetes since February, 1998. (Tr. 289; *see also,* Tr. 263-77). On March 8, 2005, he noted that Plaintiff has had

multiple complications including significant visual difficulty. (Tr. 289). Dr. Blackman also noted that Plaintiff had been using an insulin pump for six years, that all measures have been used and have failed to control her blood sugar, that she was a brittle diabetic, and that she was unable to work. *Id.*

Neurologist Dr. Valle reported on January 3, 2005, that Plaintiff had mild dysphonia, a superior oblique paresis in the left eye, afferent pupillary defect in the left eye, a pale optic papilla on the left, and a subtle myopathic face. (Tr. 278-82). Dr. Valle also reported that Plaintiff's motor tone was physiologic, her muscle strength was, at best, 4 to 4+, her sensation was impaired at the great toe bilaterally, she had absent Achilles reflexes, her gait was trepid, and that she had a mild degree of difficulty climbing onto the exam table. *Id.* Dr. Valle noted that Plaintiff relayed features consistent with myotonic muscular dystrophy of Steinert. *Id.* On January 8, 2005, Dr. Valle opined that Plaintiff was not able to work due to her progressing condition of myotonic muscular dystrophy. (Tr. 378).

A January 5, 2005, EMG was severely abnormal and consistent with a myotonic dystrophy. (Tr. 284-85).

Examining physician Dr. Koppenhoeffer reported on September 22, 2005, that Plaintiff had a slow gait with no obvious weakness, hypoactive reflexes, questionable decreased sensation, and that her strength was in the good minus range in all myotomes tested. (Tr. 326-35). Dr. Koppenhoeffer also reported that Plaintiff presented with numerous musculoskeletal problems, that she had been diagnosed as having myotonic muscular dystrophy as well as chronic fatigue syndrome and sleep apnea, was a brittle diabetic, had past treatment for diabetic retinopathy, and that she had evidence of possible early diabetic polyneuropathy. *Id.* Dr. Koppenhoeffer opined that

3

the combination of Plaintiff's impairments prevented her from doing any type of work-related activity, that she was able to lift/carry up to 10 pounds occasionally, stand/walk for 1-2 hours in an 8-hour day and for 15 to 30 minutes without interruption, and sit for 2 to 4 hours in an 8-hour day and for 1 hour without interruption. *Id.*

Dr. Valle reported on January 28, 2006, that Plaintiff was able to lift/carry less than 10 pounds occasionally, stand/walk for fewer than 2 hours in an 8-hour workday and had to periodically alternate sitting and standing to relieve pain. (Tr. 372-75).

In February, 2006, Dr. Blackman and his nurse practitioner reported that Plaintiff's ability to lift/carry were not affected by her diabetic neuropathy, she was able to stand/walk for fewer than 2 hours in an 8-hour workday, and that she was able to sit for fewer than 6 hours in an 8-hour workday. (Tr. 360-65; *see also,* Tr. 382-85).

On February 1, 2006, Dr. Burton reported that Plaintiff was able to stand for fewer than 2 hours in an 8-hour day and for 20 minutes without interruption, sit for about 4 hours in an 8-hour day and for 2 hours without interruption, and that she was occasionally able to lift less than 10 pounds. (Tr. 366-71).

As noted above, the Commissioner acknowledges that his decision is not supported by substantial evidence on the record as a whole. If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues

4

have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are

other physicians.  *Id.* (citation omitted).

With these principles in mind, this Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, the Court notes that every physician who has treated or examined Plaintiff has opined that she is disabled.  The only physicians who arguably did not reach that conclusion are the MA and the reviewing physicians.  *See,* Tr. 195-200.  However, as noted above, the Commissioner had acknowledged that the MA based his opinion solely on Plaintiff's fibromyalgia and that it was error for him (the Commissioner) to rely on that opinion in determining that Plaintiff is not disabled.  In addition, under these facts, the reviewing physicians' opinions are not substantial evidence sufficient to oppose every treating and examining physician's opinion that Plaintiff is disabled.

The Commissioner's Motion to Enter Judgment Reversing the Commissioner's Decision with Remand to the Agency, (Doc. 13), should be granted in part and denied in part. Specifically, it is recommended that the Commissioner's Motion  be granted to the extent that his decision that Plaintiff is not disabled be reversed but denied to the extent that it seeks remand for additional administrative proceedings.  Rather, it is recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

February 7, 2008.

*s/ Michael R. Merz*
United States Chief Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).